| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
|---|---|
| EASTERN DISTRICT OF NEW YORK | |

KESAV DAMA, as Guardian for his father VENKAIAH DAMA,

Plaintiff,

– against –

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Defendant.

**MEMORANDUM & ORDER**

18-cv-03104 (ERK) (SMG)

Korman, *J.*:

Plaintiff Kesav Dama ("plaintiff") brings this breach of contract action against The Prudential Insurance Company of America on behalf of his father Venkaiah Dama ("Dama"), whose long-term care policy lapsed after he missed a payment in fall of 2013. Prudential moves to dismiss.

## BACKGROUND

Venkaiah Dama took out a long-term care insurance policy with The Prudential Insurance Company of America in September 2003 (the "Policy"). Compl. ¶ 16, ECF No. 1-1. Until fall 2013, Dama "diligently and promptly paid his yearly premiums on a timely basis." *Id.* ¶ 2. On September 13, 2013, Dama "suffered a debilitating stroke." *Id.* ¶ 20. At that time, he "also suffered from early stage Alzheimer's disease," which the stroke "exacerbated." *Id.* ¶¶ 20, 33. According to plaintiff, these disabilities prevented Dama from timely paying his annual insurance premium, and he incurred more than $190,000 in otherwise reimbursable medical costs. *Id.* ¶¶ 21, 40.

Plaintiff alleges "[u]pon information and belief" that the "annual premium became due, under the terms of the policy, on . . . October 9th of each year." *Id.* ¶ 19. But according to the Policy, "The Premium Due Date will be indicated on [the insured's] bill." Oslick Decl. Ex. A, ECF No. 13-3 ("Policy"), at 18.[1] Dama's bills indicate a premium due date of September 9 of each year, not October 9. Oslick Decl. Exs. B, C, ECF Nos. 13-4, 13-5.[2] Under the Policy, if the insured fails to pay the premium within 31 days of the due date, Prudential will mail a notice requesting payment due within a 31-day grace period. Policy at 18. That "notice will be deemed to have been given 15 days after the date mailed." *Id.* The Policy terminates if the insured "fail[s] to pay any premium required for the policy when due or within the Grace Period." *Id.* at 18, 21.

After Dama failed to pay the premium due on September 9, 2013, Prudential sent a letter to Dama's son, plaintiff Kesav Dama, dated October 11, 2013. Compl. ¶ 22. Plaintiff was "the person designated to receive notice" under the Policy. *Id.* The letter indicated that Dama's premium was "31 days past due" and explained that unless Prudential received payment within 35 days, or by November 15, 2013, the Policy would be canceled retroactively as of the premium

---

[1] Although the Policy is not included as an exhibit to the complaint, it forms the basis of plaintiff's claims and is referenced and quoted extensively throughout the complaint. *See* Compl. As such, I deem that the complaint incorporates the Policy by reference and may consider the copy Prudential has submitted as an exhibit to its motion to dismiss at ECF No. 13-3. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

[2] Although the bills attached as exhibits to Prudential's motion are outside the pleadings, the complaint references a "Billing Notice" multiple times, Compl. ¶¶ 27, 28, 31(a), notes the role of the billing notice in calculating the grace period, *id.* ¶ 31(a), and alleges that Dama "had for ten years diligently and promptly paid his yearly premiums," indicating that he regularly received and paid bills from Prudential, *id.* ¶ 2. Accordingly, I deem that the complaint incorporates the billing notices by reference and will consider the bills submitted by Prudential at ECF Nos. 13-4 and 13-5. *See Chambers*, 282 F.3d at 152-53. Moreover, even if the bills were not incorporated by reference, plaintiff "relies heavily upon [their] terms and effect, which renders the document[s] integral to the complaint." *Id.* (internal quotation marks omitted). Finally, plaintiff neither objects to Prudential's reference to Dama's bills nor disputes their authenticity. *See Done v. HSBC Bank USA*, No. 09-CV-4878 (JFB)(ARL), 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010).

due date, September 9. *See id.* ¶ 25. Having received no payment, Prudential terminated the Policy on November 13, 2013, notifying plaintiff by letter. *Id.* ¶ 31(c).

Even if the insured fails to pay his or her premium causing termination of the Policy, the existence of a "Chronic Illness or Disability" may permit reinstatement. Policy at 18. A request for reinstatement must be "made within five months of the date premiums were due," and the insured must meet the definition of "Chronic Illness or Disability," as set out in the Policy. *Id.* Plaintiff does not allege that he or his father made a request to reinstate the Policy within this five-month period (or any time thereafter), and Prudential mailed a final termination notice on April 1, 2014. Compl. ¶ 39.

Finally, the Policy limits the time to "bring any action at law or in equity against Prudential to recover benefits from the Policy" to within "three years after [the insured] incur[s] Eligible Charges." Policy at 17. "Eligible Charges" are "charges for [the insured's] Long Term Care that are used as the basis for a claim." *Id.* at 8. Plaintiff filed this action on May 25, 2018, asserting claims for (1) fraud; (2) breach of contract, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing (pleaded as one count); (3) statutory consumer fraud; and (4) unjust enrichment.

## ANALYSIS

Prudential moves to dismiss all counts for failure to state a claim, both on the merits and as time-barred. In deciding a motion to dismiss under Rule 12(b)(6), courts "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Additionally, fraud claims are subject to a heightened pleading standard, according to which "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The parties agree that New York law governs the contract at issue. "Under New York law the initial interpretation of a contract is a matter of law for the court to decide." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 85 (2d Cir. 1998) (quotation marks omitted). "The primary objective of a court in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement." *Campagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000).

**I. Merits**

*A. Breach of Contract*

At the outset, it is difficult to decipher why plaintiff believes his breach of contract claim should survive given that his opposition brief proceeds by restating verbatim vast sections of the complaint and summarily concluding that the claim survives if those allegations are taken as true. *See* Opp., ECF No. 14.[3] Plaintiff does not dispute Prudential's distillation of three components to his breach claim, and I will proceed along the same lines. Plaintiff alleges that Prudential (1) miscalculated the payment due date; (2) violated the contractual grace period; and (3) failed to reinstate the Policy.

---

[3] Plaintiff counsel's copy-and-paste approach to briefing, paired with the numerous typographical errors throughout the complaint and opposition brief—which was untimely filed and inappropriately styled as an affirmation—"is inexcusable for a counseled complaint." *See Lowe v. Planning & Zoning Comm'n of Town of Mansfield*, No. 3:16-CV-381 (JCH), 2018 WL 379010, at *4 n.3 (D. Conn. Jan. 10, 2018).

1. Miscalculation of Payment Due Date

The Policy became effective on October 9, 2003 and lists the "First Anniversary Date" as October 9, 2004. Policy at 27. According to plaintiff, the anniversary date should coincide with the payment due date. *See* Compl. ¶ 19. To the contrary, the Policy provides that the "Premium Due Date will be indicated on your bill." Policy at 18. The bills submitted by Prudential—the authenticity and accuracy of which plaintiff does not contest—indicate a payment due date of September 9, not October 9. Oslick Decl. Exs. B, C, ECF Nos. 13-4, 13-5. Based on this unrefuted documentary evidence, plaintiff's claim based on miscalculation of the payment due date fails. *See Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper."); *supra* note 2 (explaining that Dama's bills may be considered as incorporated by reference or integral to the complaint).

2. Violation of Grace Period

Plaintiff next alleges that Prudential circumvented the Policy's grace period provision. Thirty-one days after nonpayment, Prudential was obligated to mail a notice requesting payment to be due within a 31-day grace period. Policy at 18. Here, the premium due date was September 9, 2013. Plaintiff failed to pay, and Prudential sent a grace period notice 32 days after the missed payment on October 11, 2013, consistent with the Policy. Compl. ¶ 22. Plaintiff alleges that the grace period notice requested payment "within 35 days of the date of the letter, or by November 15, 2015." *Id.* ¶ 25. Still having received no payment, on November 13, Prudential terminated the Policy. Compl. ¶ 31(c).

At the outset, it is unclear why the grace period notice would request payment within 35 days given that the Policy specifies a 31-day grace period. *See* Policy at 18. Plaintiff has not

5

submitted the notice as an exhibit, nor does Prudential address this discrepancy. In any event, even if Prudential purported to terminate the Policy two days before the end of the 35-day grace period set out in the letter (November 13 rather than November 15), "such error was *de minimis*," as plaintiff and his father "w[ere] advised that prompt action was required to keep the policy in force" and they made no attempt whatsoever to make the payment or correct the alleged error. *See Stein v. Am. Gen. Life Ins. Co.*, 665 F. App'x 73, 77 (2d Cir. 2016) (finding *de minimis* one-day discrepancy between letter and policy terms).

Plaintiff's principal argument, however, is that Prudential incorrectly calculated the start of the grace period.[4] The Policy makes clear that upon nonpayment the insured "will be mailed a notice requesting payment within 31 days." Policy at 18. That "notice will be deemed to have been given 15 days after the date mailed." *Id.* According to plaintiff, the grace period runs 31 days from the date the notice was "deemed to have been given," or November 26, not 31 days from the date the notice was mailed, as Prudential contends. Although plaintiff's interpretation is plausible, the contract does not expressly provide that the date the notice is "deemed to have been given" bears on its contents or the start of the grace period. Policy at 18. Indeed, insurance contracts commonly require that the insurer provide notice of the grace period before it ends, and the timing of the notice does not necessarily trigger the start of the grace period. *See, e.g., Nat'l Soc'y for Hebrew Day Schs. v. Lincoln Nat'l Life Ins. Co.*, No. 14-CV-970 (ERK) (PK), 2016 WL 5107016, at *3 (E.D.N.Y. Mar. 31, 2016) (discussing policy requiring grace period notice at

---

[4] The complaint suggests that the grace period notice was also deficient for "fail[ing] to provide information as to the amount of premiums due, or to whom the premium should be sent," Compl. ¶ 38, and/or was insufficient to satisfy the requirements of New York Insurance Law § 3211, *id.* ¶ 26. However, the Policy does not require that the grace period notice contain such information, *see* Policy at 18, nor does the counseled complaint assert a cause of action under § 3211, *see* Compl. For these reasons—and because plaintiff's opposition does not raise these issues—I do not address them here.

6

least 30 days before end of 60-day grace period); *cf.* N.Y. Ins. Law § 3211(a)(1) (insurance policy may not be terminated unless notice mailed at least 15 days before payment due date).

At best, the Policy is ambiguous as to the start of the grace period. Nevertheless, because any ambiguity must be construed against the insurer, *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (1978), plaintiff plausibly states a claim for breach of contract based on incorrect calculation of the start of the grace period, subject to the contractual limitations period discussed in Section II, *infra*. *See Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir. 1989) (holding "notice of termination did not conform to the [a]greement and was therefore ineffective under New York law").

3. <u>Failure to Reinstate the Policy</u>

In addition to the grace period, the Policy contains another safety valve for policyholders who fail to make a timely payment. It provides,

> If due to your Chronic Illness or Disability, you fail to pay your premium and your Policy terminates for this reason, you may be eligible to reinstate your Policy. You or your representative may request reinstatement if:
>
> 1) The request is made within five months of the date premiums were due; and
> 2) Your Chronic Illness or Disability is confirmed by Prudential.

Policy at 21. A "Chronic Illness or Disability," includes, *inter alia*, "[a] severe Cognitive Impairment, which requires Substantial Supervision to protect you from threats to health and safety," *id.* at 7, such as "[a] loss or deterioration in intellectual capacity that is . . . [c]omparable to and includes Alzheimer's disease and similar forms of irreversible dementia." *Id.* at 8.

Because Dama suffered from early-stage Alzheimer's disease, plaintiff argues that he qualified for reinstatement under the Policy. Compl. ¶¶ 20, 35-38.[5] Regardless, plaintiff does not

---

[5] Prudential argues that plaintiff does not allege a sufficiently serious illness or disability to qualify for reinstatement under the Policy. Mot. at 6-7, ECF No. 13-1. Although plaintiff's failure-to-reinstate claim fails on other grounds, his allegations that Dama was "incapacitated" by a stroke and suffered from early-

7

allege that he or his father ever requested reinstatement. Thus, plaintiff does not allege facts sufficient to show that he was entitled to reinstatement under the Policy, which requires that such a request be made "within five months of the date premiums were due." Policy at 21. Plaintiff acknowledges that he was designated to receive notices of non-payment, Compl. ¶ 22, and presumably could have submitted a reinstatement request on his father's behalf. Because no request was ever made, plaintiff's failure-to-reinstate claim fails.

  B. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

  A claim for breach of the implied covenant is duplicative of a breach of contract claim "when both 'arise from the same facts and seek identical damages for each alleged breach.'" *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (quoting *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 894 N.Y.S.2d 47, 50 (App. Div. 2010)). Plaintiff makes no attempt to distinguish his implied covenant claim from his breach of contract claim, alleging only that Prudential failed to abide by the terms of the Policy. Indeed, plaintiff's complaint contains a sole count lumping together a single set of allegations to support the breach of contract, breach of the implied covenant, and breach of fiduciary duty claims. *See* Compl. ¶¶ 47-51. This claim is dismissed as duplicative.

  C. *Breach of Fiduciary Duty*

  "It is well settled under New York law that insurance companies do not owe their policyholders a fiduciary duty." *Sher v. Allstate Ins. Co.*, 947 F. Supp. 2d 370, 386 (S.D.N.Y. 2013). This general rule holds absent allegations that "point to the existence of [a] special circumstance that might indicate other than an arm's length association or that might give rise to a fiduciary relationship." *Batas v. Prudential Ins. Co. of Am.*, 724 N.Y.S.2d 3, 7 (App. Div.

---

stage Alzheimer's disease are sufficiently plausible to establish that he may have suffered from a "Chronic Illness or Disability." *See Iqbal*, 556 U.S. at 679.

2001). Because plaintiff "make[s] no showing that [his] relationship with defendant[] is unique or differs from that of a reasonable consumer," no fiduciary duty exists and his claim fails. *Id.* "Even if [I] were to find that [plaintiff] adequately pleaded the existence of a fiduciary relationship, [I] nevertheless would grant the motion to dismiss because the breach of fiduciary claim is based upon the same allegations contained in the [second] count of the . . . complaint to recover damages for breach of contract." *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007); *see also Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014); *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013).

    D. *Common Law Fraud*

The only misrepresentations plaintiff alleges in support of his fraud claim consist of "terms and representations" in the Policy itself. Compl. ¶¶ 42-43. At most, plaintiff's fraud claim amounts to an allegation that Prudential never intended to abide by the terms of the Policy, which is not a basis for fraud. *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." (quoting *Sudul v. Comput. Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994))). "In other words, 'simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim.'" *Id.* (quoting *Best Western Int'l, Inc. v. CSI Int'l Corp.*, No. 94 Civ. 360 (LMM), 1994 WL 465905, at *4 (S.D.N.Y. Aug. 23, 1994)).

Plaintiff admits that at least some of his alleged "misrepresentations were contractual," meaning they cannot form the basis for a fraud claim. Yet he maintains "there were other[] [misrepresentations], alleged or implied in the complaint, that were outside of the contractual representations, that will be set forth after discovery." Opp. at 9. This approach runs afoul of the strict requirements of Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Accordingly, plaintiff fails to sufficiently plead common law fraud.

E. *Statutory Consumer Fraud*

At the outset, plaintiff offers no response whatsoever to Prudential's argument that his claim under New York General Business Law Section 349 should be dismissed, so the claim is deemed abandoned. *See Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 405 (E.D.N.Y. 2018). Even so, it fails on the merits.

"[T]o satisfy General Business Law [Section] 349[,] plaintiffs' claims must be predicated on a deceptive act or practice that is 'consumer oriented,'" rather than "a private contract dispute as to policy coverage." *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999). *See generally Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447-49 (S.D.N.Y. 2004). "A 'private contract dispute as to policy coverage' is not actionable under [Section] 349." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 190 F. Supp. 2d 629, 638-39 (S.D.N.Y. 2002) (quoting *Gaidon*, 725 N.E.2d at 603), *vacated on other grounds*, 347 F.3d 394 (2d Cir. 2003). "[C]onclusory allegations, even of the existence of a claim settlement policy designed to deceive the public, are not sufficient to state a claim under Section 349 in the absence of factual allegations in support thereof." *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004).

Plaintiff alleges only that "[d]efendant knowingly and intentionally violated" Section 349, without any further explanation. Compl. ¶ 53. His allegations—far barer than others dismissed by courts in this Circuit—are insufficient to support a Section 349 claim. *See, e.g.*, *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) (bare allegation of "national policy to terminate unprofitable disability insurance policies" insufficient to sustain Section 349 claim).

F. Unjust Enrichment

Similarly, plaintiff fails to defend his unjust enrichment claim against dismissal and has thus abandoned it. *See Spinnato*, 322 F. Supp. 3d at 405. Regardless, the claim must be dismissed on the merits. "The notion of unjust enrichment applies where there is no contract between the parties." *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000). Thus, "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009). Here, the Policy governs the parties' obligations with respect to Dama's long-term care expenses, and plaintiff's claims arise out of that subject matter. Therefore, the unjust enrichment claim cannot proceed. *See Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005).

II. **Limitations Period**

Under New York Law, the statute of limitations for breach of contract and common law fraud is six years, unless "a shorter time is prescribed by written agreement." N.Y. C.P.L.R. §§ 201, 213(2), 213(8). The period is three years for plaintiff's breach of fiduciary duty, statutory consumer fraud, and unjust enrichment claims. *Id.* § 214(2); *Seijin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 553-54 (S.D.N.Y. 2016). Here, the Policy shortens the

limitations period to "three years after [the insured] incur[s] Eligible Charges" for "any action at law or in equity against Prudential to recover benefits from the Policy." Policy at 17.

While Prudential argues that plaintiff failed to bring this action until well after the limitations period elapsed, plaintiff responds that his action seeks to reinstate the Policy rather than "recover benefits," meaning that the shortened limitations period does not apply. But plaintiff ultimately alleges that Dama was "*deprived of the necessary insurance reimbursement under the Policy*," which also comprises his alleged damages. Compl. ¶¶ 46, 51 (emphasis added). New York courts commonly characterize such claims as actions to "recover benefits," even where the plaintiff asserts that the underlying policy was wrongfully terminated. *See, e.g.*, *Herman v. Assoc. Hosp. Serv. of N.Y.*, 275 N.Y.S.2d 361, 361 (App. Div. 1966), *aff'd on the opinion below*, 20 N.Y.2d 784 (1967); *see also Topiwala v. N.Y. Life Ins. Co.*, 464 N.Y.S.2d 184, 185 (App. Div. 1983); *Hirsch v. N.Y. Life Ins. Co.*, 45 N.Y.S.2d 892, 893-94 (App. Div. 1944). Because plaintiff attempts to recoup expenses under the terms of the Policy, his action is one to "recover benefits" under the limitations provision.

Plaintiff further contends that the shortened limitations period applies "only in cases where the insured has filed a claim for reimbursement of expenses for eligible charges under an existing, enforceable policy." Opp. at 12. This argument rests on the Policy's definition of "Eligible Charges," which provides that such charges "must be incurred . . . while [the policyholder] [was] insured under the Long Term Care Policy." Policy at 8. According to plaintiff, because Prudential purported to terminate the Policy, Dama was not "insured" at the time he incurred the medical expenses at issue, meaning that he did not incur "Eligible Charges" for purposes of triggering the limitations period. Opp. at 12. In effect, plaintiff asks to have it

both ways: he argues that Dama was not insured for the purposes of triggering the limitations period yet seeks to recover benefits under the Policy for the expenses Dama incurred.

The Policy defines "Eligible Charges" as "[t]he charges for [the insured's] Long Term Care that are used as a basis for a claim." Policy at 8. Here, these are Dama's expenses for long-term care incurred following his debilitating stroke. Although the definition goes on to specify certain reimbursement requirements, it does not make sense to incorporate those requirements into the limitations provision as plaintiff suggests. This interpretation would require a determination on the ultimate issue of an insured's claim—*i.e.*, whether the charges are reimbursable under the Policy—before the limitations period could be calculated. Indeed, the "Eligible Charges" provision further requires that the charges be incurred "for services and supplies described in the Covered Services section" and "after the Benefit Waiting Period," or 100 days after the Policy becomes effective. Policy at 8, 15, 27. Under plaintiff's logic, a three-year limitations period would apply to foreclose late-but-otherwise-valid claims for covered benefits, but a six-year limitations period would govern frivolous claims for uncovered charges or charges incurred before the mandatory waiting period has run. Interpreting the limitations provision to apply only to claims with some degree of merit is an unreasonable reading of the clause. *See, e.g.*, *Rothenberg v. Lincoln Farm. Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) (noting that "an interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect").

Plaintiff's proposed reading also renders other provisions of the contract nonsensical. For example, the Policy's "Extension of Benefits" provision reads:

> Termination of your Policy shall be without prejudice to any benefits payable under your Policy if your Chronic Illness or Disability began while your Policy was in force and continues without interruption after termination. Benefits will be extended

> until the earlier of: 1) *the date on which you no longer incur Eligible Charges*; or 2) the date you reach the lifetime maximum.

Policy at 21 (emphasis added). The reimbursement requirements discussed in the Eligible Charges definition provide that such "charges must be incurred . . . while you are insured under the Long Term Care Policy, *subject to the Extension of Benefits provision*." Policy at 8 (emphasis added). Plaintiff's proposed reading would render the Extension of Benefits provision circular: The Extension of Benefits period extends until the claimant stops incurring Eligible Charges, defined to include charges incurred during the Extension of Benefits period. Instead, "Eligible Charges" is more fairly read in context to refer simply to "charges for your Long Term Care that are used as a basis for a claim." *See* Policy at 8. Otherwise, the Extension of Benefits period would have no clear end.

Finally, reading the term "Eligible Charges" to embody the eligibility requirements laid out in the term's definition renders other portions of the contract superfluous. Take, for instance, the following clause: "If you were incurring Eligible Charges before you were assessed, this Policy will provide coverage for these Eligible Charges up to seven days before the date you are assessed, *but only if you are eligible for benefits*." Policy at 14 (emphasis added). Reading "Eligible Charges" to incorporate the definition's reimbursement requirements—which govern whether someone is "eligible for benefits"—deprives the italicized portion of the sentence of any meaning. Again, it makes more sense to read "Eligible Charges" to refer simply to the charges forming the basis of the claim. *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) ("The court should read the integrated contract . . . to safeguard against adopting an interpretation that would render any individual provision superfluous." (internal quotation marks and citations omitted)).

This construction of the contractual term best harmonizes the Policy's various (unartfully drafted) provisions and avoids reading ambiguity into the contract where none otherwise exists. *See id.* at 467 ("Where the parties dispute the meaning of particular contract clauses, the task of the court is to determine whether such clauses are unambiguous when read in the context of the entire agreement, and where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity." (citations and quotation marks omitted)); *Russell-Stanley Holdings, Inc. v. Buonanno*, 327 F. Supp. 2d 252, 256 (S.D.N.Y. 2002) ("[W]hen interpreting a written contract, its terms should be given their ordinary meaning and reconciled with other parts of the contract to avoid inconsistencies."); *Gessin Elec. Contractors, Inc. v. 95 Wall Assocs., LLC*, 903 N.Y.S.2d 26, 28 (App. Div. 2010) ("The courts should construe a contract in a manner that avoids inconsistencies and reasonably harmonizes its terms.").

Plaintiff does not dispute that the shortened limitations period, if applicable, started to run at the time Dama began to incur charges related to the stroke on or around September 13, 2013. *See* Opp. at 13. The three-year period therefore elapsed sometime in fall 2016, more than a year and a half before plaintiff brought this action. Accordingly, plaintiff's claims are time-barred.[6]

---

[6] While plaintiff copied and pasted into his opposition brief the complaint's allegation that "Dama became mentally incompetent and unable to handle his affairs within the meaning of the law, which by law tolled any requirement to pay the premiums until the disability disappeared, or a representative was appointed to care for [Dama's] affairs," Opp. at 7, he does not argue that the limitations period should be equitably tolled due to mental incompetency. *See* N.Y. C.P.L.R. § 208. Accordingly, I do not reach the issue.

## CONCLUSION

Defendant's motion to dismiss is granted as follows. Counts One and Two are dismissed with leave to replead within 30 days of this order. *See* Fed. R. Civ. P. 15(a)(2). Counts Three and Four are dismissed as abandoned. *See Spinnato*, 322 F. Supp. 3d at 405-06.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
December 20, 2018

Edward R. Korman
United States District Judge